FILED
 2012 Jan-23 PM 06:03
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| vs. ) | **CASE NO. 3:11-CR-0054-SLB** |
| ) | |
| **RICKY WALTER DENTON,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

This case is presently pending before the court on Motion for a Hearing to Determine if Consent to Search Valid or Involuntary, (doc. 30), which the court deems to be a Motion to Suppress, and Motion to Dismiss Indictment, (doc. 57). On June 14, 2011, the court held a hearing on the defendant's pending motions and heard testimony offered by the parties. A transcript of that hearing was filed in the record. (Doc. 172.) The court orally ruled on the record that defendant's motions (doc. 30 and 57) were due to be denied. This Memorandum Opinion and Order sets forth in writing the rationale for the court's oral ruling.

Denton contends that his consent was not voluntary and/or that others who gave consent were without authority to consent to a search of his property. He also contends that the law enforcement officers engaged in outrageous conduct warranting dismissal of the Indictment. The Government contends that these searches were conducted pursuant to defendant's consent and/or the consent of others, and that the law enforcement officers did not engage in any conduct that warrants dismissal of the Indictment.

For the reasons set forth below, defendant's Motion to Suppress, (doc. 30), and his Motion to Dismiss the Indictment, (doc. 57), are **DENIED**.

## I. FINDINGS OF FACTS

On or about December 17, 2009, Special Agent Patrick Stokes, of the FBI, was contacted by the Colbert County Sheriff's Department and told about a robbery at the First Southern Bank in Muscle Shoals, Alabama. Special Agent Stokes and Special Agent Lee Jolly began working the robbery with Lieutenant Tim Vanderford and Lieutenant Steven Benson of the Colbert County Sheriff's Department. A witness had reported seeing a green Mustang that had been used in the robbery. A local police officer told the law enforcement officers that Denton had a green Mustang.

Later that evening a taxi driver contacted the Florence Police Department with information concerning two men he had picked up at Chateau Orleans Apartments. The men had been standing behind a green Mustang at the Chateau Orleans Apartments. Defendant had an apartment at Chateau Orleans, which he shared with his son, Jonathan Todd, and Todd's then-girlfriend, and now his wife, Hollie Anderson Todd. The taxi driver described one of the men as a thin white male with a full beard and a pony tail and the other man as stockier with blond hair. The cab driver said he had taken the men to the Webster Inn in Sheffield, Alabama. The men paid the fare in cash.

Special Agents Stokes and Jolly, together with Lieutenant Tim Vanderford, Lieutenant Steven Benson, and two agents from the Colbert County Drug Task Force, went

to the Webster Inn on the morning of December 18, 2009. The officers identified a man on a security video fitting the taxi driver's description of a thin white man with a beard and long hair. Watching the video, the officers were able to identify the room of the thin man. The room was registered to David Fountain, who was known to Special Agent Stokes and Lieutenant Vanderford. The law enforcement officers went to the room and knocked on the door.

The thin man seen on the surveillance tape, who was later identified as James Wimberley, answered the door. Special Agent Stokes asked him if they could ask him some questions. Wimberley opened the door and Special Agent Stokes, Lieutenant Vanderford, Lieutenant Benson, and one of the officers from the Drug Task Force entered the room. When they entered the room, Denton was sitting at a table against the room's far wall, and he stood up, turned around, and put his hands on the wall. Another man, Larry Anderson, was sitting at the same table. The officers separated the men, taking Denton into the motel hallway, Wimberley into the bathroom by the door to the room, and leaving Anderson at the table.

The officers quickly identified Anderson and determined that he had arrived at the motel only recently. They released him.

Wimberley told the officers that he and Denton had arrived at the Webster Inn the previous evening, and he identified which bed he had slept in and which bed defendant had slept in. Wimberley gave the officers consent to search the room.

Lieutenant Benson went into the hallway with Denton. He asked for Denton's consent to search the motel room and then he went to his car to retrieve the Consent-to-Search forms. Special Agent Lee Jolly remained with Denton in the hallway. When Sergeant Benson returned with the forms, he completed the forms with the motel room number and with information from Denton as to his apartment and business addresses. He then read the forms to Denton and asked Denton if he understood and if he consented to the officers searching these three locations. Then, Denton signed the forms. Detective Benson testified that defendant "understood everything" and agreed to allow the officers to search his motel room, his apartment at Chateau Orleans, and his car wash business. Special Agent Stokes, Lieutenant Vanderford, Special Agent Jolly, and Sergeant Benson testified that Denton's demeanor was fine and he did not appear to be under the influence of drugs or alcohol at this time. The court found this testimony credible.

There was testimony that by the time Denton got to the jail he could hardly stand up. Denton testified that he was under the influence of alcohol and drugs at the time of the consent. He testified further that because there was six detectives he felt he had no choice but to give consent. The court does not credit Denton's testimony that he was impaired or was coerced to sign the forms.[1]

After defendant signed the forms, the officers began searching the room. Lieutenant Vanderford opened a wallet on the table where Anderson and Denton had been sitting when

---

[1] James Wimberly, Denton's co-defendant, testified that he gave the officers consent to search the room.

4

the officers arrived. Inside the wallet was a Social Security card and a Texas driver's license in the name of David Fountain; the driver's license had defendant's picture. Also, the officers found over $1,000 under the mattress of the bed that Wimberley had identified as the one used by Denton. After they completed their search of the room, the officers arrested Denton for possession of a forged instrument. He has been in custody since December 18, 2009.

Later that day, the officers executed searches of defendant's apartment and his business.

On or about February 26, 2010, Hollie Anderson Todd went to talk to Lieutenant Vanderford about the bank robbery. At this time, she signed a Consent-to-Search form for a second search of the Chateau Orleans apartment. At the suppression hearing, Mrs. Todd testified that she was living in the apartment at the time,[2] and, after Denton was arrested, she had the lease and the utilities changed to her name. However, Denton's belongings remained in the apartment. The apartment was searched that day and a piece of sheet rock from the wall was removed.

Around the end of February or the beginning of March, the officers returned to the car wash and took pictures of the exterior of the business. They went inside the car wash; however, the government represented to the court at the June 14, 2011, hearing that they did

---

[2]Denton questioned Mrs. Todd regarding whether she had moved out of the apartment at the time she signed the Consent-to-Search form. Mrs. Todd testified that she had not moved out of the apartment and that she was still living in the apartment at the time she signed the form. The court credits Mrs. Todd's testimony.

not plan to offer any evidence obtained during this second search except for the photographs.[3] Denton represented to the court that his former landlord, Ms. Sutton, would testify that the officers "tried to get her to evict [him]." According to Denton, the officers "told her it would be best for her to . . . serve me with the notice to vacate and then sign the consent to search to give them reason to search." The court excluded testimony from Ms. Sutton as it was irrelevant to Denton's Motion to Suppress based on the fact that nothing from the second search of his car wash business but exterior photographs was going to be offered in his case.

## II. DISCUSSION

### A. CONSENT TO SEARCH

The Supreme Court has held:

> It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)(internal quotations and citations omitted). "[W]here the validity of a search rests on consent, the [government] has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful

---

[3]The government did not offer at trial any items obtained from the search of the car wash.

6

authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983)(citations omitted). "[T]he voluntariness of a consent to search depends on the totality of the circumstances." *United States v. Farley*, 607 F.3d 1294, 1332 (11th Cir. 2010)(citing *Schneckloth*, 412 U.S. at 227).

> In determining the voluntariness of a defendant's consent, [the Eleventh Circuit has] stated . . . that a court must look at several factors, which include whether the defendant was "free to leave," whether there was "coercive police procedure," "the extent of [the] defendant's cooperation or awareness of a [right to] refuse to consent," "whether [the defendant] could refuse to consent," the extent of the defendant's "education and intelligence," and the defendant's "belief that no incriminating evidence would be found."

*United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002)(quoting *United States v. Gonzalez*, 71 F.3d 819, 830-31 (11th Cir. 1996)). Also, "intoxication is a factor to consider, but that fact alone is not sufficient to undermine his consent." *United States v. Hall*, 565 F.2d 917, 921 (5th Cir. 1978)(citations omitted);[4] *see also United States v. Watters*, 572 F.3d 479, 483 (8th Cir. 2009)(citations omitted); *United States v. Scheets*, 188 F.3d 829, 839-40 (7th Cir. 1999). "In each case, the question is one of mental awareness so that the act of consent was the consensual act of one who knew what he was doing and had reasonable appreciation of the nature and significance of his actions." *Watters*, 572 F.3d at 483 (quoting *United States v. Castellanos*, 518 F.3d 965, 969 (8th Cir. 2008)(quoting *United States v. Rambo*, 789 F.2d 1289, 1297 (8th Cir. 1986))); *see also Scheets*, 188 F.3d at 840 (consent valid even though defendant was intoxicated; "no evidence" that defendant was

---

[4]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

unaware "of what he was doing or that he failed to appreciate the significance of his actions due to his consumption of alcohol").

## B. DECEMBER 18, 2009 SEARCHES

Based on the totality of the circumstances, the court finds that Denton's consent to search his motel room, his apartment, and his business was "freely and voluntarily given," and was not the "a mere submission to a claim of lawful authority." *Royer*, 460 U.S. at 497.

### 1. Denton Informed of his Right to Refuse to Consent

Although the consent forms are somewhat confusing,[5] Lt. Benson testified that he read the forms to Denton. The forms state that Denton had "been informed of [his] Constitutional right not to have a search made of the premises . . . mentioned [in the Consent-to-Search form] without a search warrant and of [his] right to refuse to consent to such a search, and that anything found may be used against me as evidence." The forms also state that "written permission [was] given by [Denton] to the . . . officers voluntarily and without threats or promises of any kind." Benson testified he had no doubt Denton gave permission to search the Webster Inn Hotel room, the car wash, and his apartment. (Doc. 172 at 153.) The court credits Lieutenant Benson's testimony that Denton understood the terms of the Consent-to-Search forms, including his right to refuse to consent to the searches. The court also credits Lieutenant Benson's testimony that Denton understood the areas to be searched.

---

[5] *See* discussion of forms during Suppression Hearing. (Doc. 172, at 149-152; 182-83, 230-31.)

**2. The Motel Room Was Not Searched and Denton Was Not Arrested until after He Signed the Consent to Search Form**

Although Denton testified he signed the forms only *after* the motel room was searched and he was arrested, the court credits the testimony of Lieutenants Vanderford and Benson, and Special Agents Jolly and Stokes that Denton signed the consent forms *before* the motel room was searched. Moreover, the court credits the testimony of the officers that Denton was not arrested until *after* Vanderford found the forged Texas driver's license and Social Security card in the name of David Fountain. The court finds Denton's testimony that he signed the consent forms after he was arrested is not credible.

**3. No Evidence That Denton's Consent Was the Result of Coercive Conduct by the Officers**

The court also finds Denton's testimony that the officers came into his motel room with their guns drawn is not credible. Although as many as six officers entered the motel room, the court finds that they did not have their weapons drawn. Denton testified that he believed he had no choice but to sign the consent forms. However, he did not testify as to any threat or abuse by the officers; he testified only that six agents came to the motel room and he felt like he could not leave and that he did not have any control. The court finds that this evidence is insufficient to show that he was coerced. "[T]he absence of intimidation, threats, abuse (physical or psychological), or other coercion is a circumstance weighing in favor of upholding what appears to be a voluntary consent." *United States v. Jones*, 475 F.2d 723, 730 (5th Cir.), *cert. denied*, 414 U.S. 841 (1973); *see also United States v. Butler,* 102

9

F.3d 1191, 1197-98 (11th Cir. 1997)(consent to search voluntary despite the fact that "the arresting officers had stationed other officers around the perimeter of the house in order to prevent its occupants from leaving, thus effectively seizing the occupants prior to obtaining consent"); *United States v. Garcia*, 890 F.2d 355, 360-61 (11th Cir. 1989)(consent voluntary despite fact that "fourteen agents present," defendant was under arrest, agents told defendant they would "secure the house and apply for a search warrant," and defendant responded, "'You can go ahead and search the house.'");United States v. Long, 866 F.2d 402, 404 (11th Cir.1989)(consent given after officers threatened to get a warrant and "dig the place up"); *United States v. Espinosa–Orlando*, 704 F.2d 507, 513 (11th Cir.1983)(affirming a finding that consent not the product of coercion even though defendant was under arrest and lying on the ground under gunpoint).

**4. Denton's Education and Intelligence Sufficient to Allow Him to Knowingly and Voluntarily Consent**

Denton, who has a GED, appears to be of capable of understanding the terms of the consent forms and of knowingly consenting to the searches. He has previous experience with law enforcement and the criminal justice system sufficient to allow him to appreciate the consequences of allowing the searches without a warrant. Therefore, the court finds that Denton has sufficient education and intelligence to understand the terms of the Consent-to-Search form, whether he read them or they were read to him, and to knowingly and voluntarily consent to the searches.

### 5. Denton Was Not Intoxicated at the Time He Signed the Consent Forms

Denton contends that he was under the influence of drugs and alcohol at the time he signed the Consent to Search forms. The court finds this testimony is not credible. First, despite claiming he was so intoxicated as to be incapable of knowingly and voluntarily consenting to the searches, Denton was able to testify as to a number of details surrounding the signing of the consent forms and the search of his motel room. The court finds Denton's testimony regarding the extent of his intoxication is not credible. Also, the court notes that Wimberly, who is familiar with Denton's drug use, testified that Denton did not appear under the influence of drugs or alcohol at the time of the search. He testified that Denton had snorted some Oxycontin a couple of hours before the officers arrived at the room; however, he testified that the amount of Oxycontin was not enough to impair Denton. Wimberly testified that Denton appeared "normal" when the officers came to the door. Special Agent Jolly and Lieutenant Benson both testified that Denton did not appear to be intoxicated at the time he signed the Consent-to-Search forms. Special Agent Stokes and Lieutenant Vanderford testified that Denton did not appear to be under the influence of drugs or alcohol at the time immediately preceding or following their initial contact with Denton.

Based on the testimony of Wimberly and the law enforcement officers, the court finds that Denton was not intoxicated to the extent that he did not know what he was doing or was incapable of appreciating the nature and significance of his consent.

Therefore, based on the foregoing, the court finds that Denton knowingly and voluntarily consented to the search of his motel room, his apartment, and his business on

December 18, 2009. His Motion to Suppress any evidence found during these searches is **DENIED**.[6]

## C. SECOND SEARCH OF THE APARTMENT – CONSENT OF HOLLIE TODD, nee ANDERSON

Denton contends that the second search of his apartment was illegal because officials did not seek his consent; rather, "they sought third-party consent and that consent was invalid." (*See* doc. 119 at 21.) On or about February 26, 2010, Hollie Anderson Todd gave Lieutenant Vanderford consent to search Denton's apartment. At this time, Denton had been in custody since December 18, 2009. Mrs. Todd moved into the apartment sometime before December 18, 2009, and she was still living in the apartment at the time of the second search. Sometime before February 26, 2010, Mrs. Todd had the lease and the utilities put into her name.

> For a warrantless search to be constitutionally valid on the basis of consent, that consent must be given voluntarily by an individual possessing "common authority" over the premises. Common authority "rests . . . on mutual use of the property by persons generally having joint access or control for most purposes," and is not implicated by a mere property interest alone.

*Bates v. Harvey*, 518 F.3d 1233, 1244 (11th Cir. 2008)(quoting *United States v. Matlock*, 415 U.S. 164, 172, n.7 (1974); citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). At the time she gave Lieutenant Vanderford consent to search the apartment a second time, Mrs. Todd had authority over the apartment sufficient to consent to its search and the officers

---

[6] In addition, the other occupant of the hotel room, James Wimberly, gave a valid consent to search the hotel room. *See Bates v. Harvey*, 518 F.3d. 1233, 1244 (11th Cir. 2008).

were not required to obtain Denton's consent or allow him the opportunity to object because he was not present at the apartment when the search began. *See United States v. Travis*, 311 Fed. Appx. 305, 308-10 (11th Cir.)(unpublished)(citing *Georgia v. Randolph*, 547 U.S. 103 (2006), *cert. denied* 129 S. Ct. 2816 (2009).

Therefore, Denton's Motion to Suppress evidence seized during the second search of his apartment is **DENIED**.[7]

**D. SECOND SEARCH OF THE CAR WASH**

At the suppression hearing, some discussion was had regarding certain photographs of the outside of the car wash taken during a second search of the car wash, undertaken with the consent of Denton's landlord, Ms. Sutton. Denton did not file a motion to suppress these photographs, but at the hearing he objected to their admission based on the alleged illegal second search of the car wash.

Taking photographs of the outside of the car wash, even if a trespass, was not a search. *See Ehlers v. Bogue*, 626 F.2d 1314, 1315 (5th Cir. 1980). Therefore, to the extent the record can be read to support a Motion to Suppress the photographs of the outside of the car wash, such motion is **DENIED**.

---

[7]No evidence obtained during this search was offered at trial.

### E. MOTION TO DISMISS THE INDICTMENT

Denton asks the court to dismiss the Indictment "for outrageous government conduct during the investigation as to violate the universal sense of justice." (Doc. 57 at 1.) He alleges:

> First[,] the defendant argues and draws attention to the direct violation of his [Fourth] Amendment right against unreasonable searches in the illegal and unlawful search of his motel room[,] which in fact Detective Benson committed a crime under 18 [U.S.C.] § 2236.[8] Secondly the defendant directs the court to the illegal arrest from illegal activity by the police and the violation of the [Fourth] Amendment rights in illegally seizing his rightful [property]. Then the defendant calls attention to the malicious attempt to get the defendant indicted on what the government knew was [an] illegal arrest. Then the [defendant] draws the attention of the court to the on[-]going seizure of the defendant's mail and the fact these detectives [were procuring] the

---

[8]Section 2236 provides:

Whoever, being an officer, agent, or employee of the United States or any department or agency thereof, engaged in the enforcement of any law of the United States, searches any private dwelling used and occupied as such dwelling without a warrant directing such search, or maliciously and without reasonable cause searches any other building or property without a search warrant, shall be fined under this title for a first offense; and, for a subsequent offense, shall be fined under this title or imprisoned not more than one year, or both.

This section shall not apply to any person –

. . .

(c) making a search at the request or invitation or **with the consent of the occupant of the premises**.

18 U.S.C. § 2236. As set forth above, the court finds that defendant consented to the search of his motel room. Also, the court credits the testimony of Detective Benson and Lieutenant Vanderford that Benson did not search the motel room.

14

> defendant's federally protected United States mail to other private citizens in attempt to get statements that were made under duress. Clearly that action went beyond the normal censorship of mail and clearly violated the defendant's [Fourth] Amendment rights. Then the [defendant] argues that for the detectives to contact the defendant's landlord and obtain a letter to vacate and consent to search through intimidation and then conduct the illegal search on the same day is an almost laughable mockery of the [fourth] amendment to the Constitution of the United States. Finally the [defendant] brings the court to the statement the person of James Wimberly made against the defendant and presented to the grand jury after asking for and being denied his [sixth] amendment right to assistance of counsel. Clearly that statement was tainted and . . . obtained under duress as was Jonathan Todd's and Sarah Cornelius['s] after being presented and allowed to read the defendant's illegally seized mail addressed to someone else. In closing the defendant merely asks this court is the Constitution of the United States rights of the citizens to be protected or to be manipulated and made a mockery of at the United States

(Doc. 57 at 4-5 [footnote added].)

"As a general rule, as long as the prosecutor has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute." *United States v. Jones*, 601 F.3d 1247, 1260 (11th Cir. 2010)(quoting *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006)). However, an Indictment may be dismissed, even though supported by probable cause, based on outrageous conduct by law enforcement officers. Defendant contends that his Indictment is due to be dismissed based on outrageous conduct of law enforcement officers. (*See* doc. 57 at 5-6 [citing *United States v. Luttrell*, 889 F.2d 806 (9th Cir. 1989), amended in part and vacated in part 923 F.2d 764 (9th Cir. 1991); *United States v. Ramirez*, 710 F.2d 535 (9th Cir. 1983)].)

The Supreme Court has recognized that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process

principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973). However, to support dismissal of an indictment, such conduct must "violat[e] that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 432 (quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960)). "The limitations of the Due Process Clause of the Fifth Amendment come into play ***only*** when the Government activity in question violates some protected right of the Defendant." *Hampton v. United States*, 425 U.S. 484, 490-91 (1976)(emphasis added). "More particularly, absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate. . . . The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." *United States v. Morrison*, 449 U.S. 361, 365-66 (1981); *see also United States v. Valencia-Vergara*, No. 8:06-CR-279-T-17TBM, 2007 WL 177790, *1 (M.D. Fla. Jan. 19, 2007)("The remedy for the acquisition of evidence in violation of a defendant's constitutional rights is suppression rather than dismissal of the indictment."), *affirmed* 264 Fed. Appx. 832 (11th Cir. 2008)(unpublished). "The defense [of outrageous conduct] can be invoked only in the 'rarest and most outrageous circumstances,' *United States v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984), and must be supported by more than mere speculation and theory." *United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000).

### 1. Illegal Search

For the reasons set forth above, the court finds that the search of defendant's motel room, apartment, and car wash were pursuant to his knowing and voluntary consent. The searches were not illegal and, thus, this conduct did not violate defendant's due process rights.

### 2. Illegal Arrest

Defendant was arrested for possession of a forged instruments, the Social Security card and the Texas driver's license, with defendant's picture, in the name of David Fountain. The false identification was found during the consensual search. Moreover, the fraudulent nature of the identification was evident on the scene. The court finds no violation of defendant's due process rights based on his arrest for possession of forged identification.

### 3. "Malicious" Indictment

As set forth above, defendant was in possession of a false identification in the name of David Fountain. He has not presented specific evidence of the malicious intent and/or any wrongful efforts of the government to prosecute him. However, assuming he was indicted for some offense involving the possession of the false identification, such efforts to prosecute him do not violate the Due Process Clause, especially in light of the fact that he consented to the search that revealed the unquestionably false identification belonging to him. The court finds nothing about this conduct was outrageous.

### 4. Seizure of Defendant's Mail

Defendant contends that, while in custody, his mail was seized and, "During the illegal seizure of the defendant[']s mail at the jail, investigators gathered what was purported to be evidence of tax fraud, which brought about the 17 count indictment [in] case [number] 3:11-CR-0098, as well as the indictment in this matter." Nothing seized from defendant's mail will be offered in support of the government's prosecution of the instant matter. Therefore, defendant has not suffered any prejudice in this matter as a result of the seizure and such conduct did not violate his right to due process in this case.

### 5. Contact with Defendant's Landlord

As set forth above, the only evidence the government intends to offer from the second search of Denton's business is the photograph of the outside of the building. Therefore, he has not suffered any prejudice in this matter as a result of law enforcement officers' contact with his former landlord and, thus, such conduct did not violate his right to due process in this case.

### 6. Witness Statements Made Without Counsel and/or Under Duress

Denton has no right to object to a witness's statement made without counsel. Nothing in the record indicates that any statements of Wimberley, Todd, and/or Cornelius are false. The fact that Wimberley was denied counsel does not prove that such lack of counsel prejudiced defendant. Moreover, the fact that Todd and Cornelius cooperated with law enforcement officers after reading statements made by Denton in letters to other people does

not support an inference that their cooperation included making false statements about Denton. Without some showing that these witnesses were coerced into making false statements, Denton has not demonstrated any prejudice or a violation of any constitutional right.

The court has considered the alleged incidents of outrageous conduct, alone and collectively, and finds that these incidents do not rise to the level of outrageous conduct that violates Denton's right to due process. Therefore, his Motion to Dismiss the Indictment, (doc. 57), is **DENIED**.

**DONE**, this 23rd day of January, 2012.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE