**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **RICKY WALTER DENTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **CASE NO.  3:14-CV-8052-SLB** |
| **vs.** | ) | **Crim. Case No.  3:11-CR-54-SLB-JEO** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

This case is currently before the court on petitioner Ricky Walter Denton's Response to Court's Order for Denton to Show Cause in Writing Why His Remaining Claims Should Not Be Summarily Dismissed.  (Doc. 53.)[1]  For the reasons set forth below, the court finds that Denton's remaining claims are due to be denied and his Renewed and Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255, (doc. 30; crim. doc. 425), is due to be dismissed.

**TABLE OF CONTENTS**

I.  PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.  STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

III.  DISCUSSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
        A.  MISCARRIAGE OF JUSTICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

---

[1]Citations to documents in the court's record in petitioner's Motion to Vacate, Case No. 3:14-CV-8052-SLB, appear as "(Doc. __)." Citations to documents in the court's record in the criminal proceedings against petitioner, Case No. 3:11-CR-0054-SLB-JEO, appear as "(Crim. Doc. __)." Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

B. DENTON'S HABEAS CLAIMS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    1. PROSECUTORIAL MISCONDUCT. . . . . . . . . . . . . . . . . . . . . . . . 14
        a. Second Grand Jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        b. False Evidence Presented to Grand Jury. . . . . . . . . . . . . . . . 16
    2. LAW BOOKS AND OTHER LEGAL MATERIALS. . . . . . . . . . . . 22
    3. STANDBY COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        a. Steen's heads-up to Stokes. . . . . . . . . . . . . . . . . . . . . . . . . 26
        b. Witness Subpoenas. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
        c. Withheld Discovery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    4. HOLLIE AND JONATHON TODD. . . . . . . . . . . . . . . . . . . . . . . . 35
    5. FRAUD ON THE COURT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
    6. BANK ROBBERY IS A CRIME OF VIOLENCE. . . . . . . . . . . . . 39
    7. SENTENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CERTIFICATE OF APPEALABILITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

## I. PROCEDURAL HISTORY

The Eleventh Circuit set forth the following brief history of the proceedings in this

case as follows:

> In March 2011 Denton was charged with armed bank robbery and
> brandishing a firearm during and in relation to a crime of violence. He chose
> to represent himself and proceeded to a jury trial. . . .
>
>     . . .
>
> The jury found Denton guilty of both charges, and the district court
> sentenced him to 244 months imprisonment. Denton appealed that conviction
> and we affirmed it.[2] *See United States v. Denton*, 535 Fed. Appx. 832 (11th

---

    [2]The Eleventh Circuit found the following evidence presented at trial sufficient to
support the jury's verdict:

>     The evidence presented at trial, when viewed in the light most favorable
> to the jury's verdict, weaves a compelling narrative of the bank robbery with

Denton at its center.  Shortly after 4:00 p.m. on December 17, 2009, witnesses saw a clean-shaven white male with dirty blonde hair and sporting a yellow-hooded coat, blue jeans, and a backpack approach the entrance of the First Southern Bank.  As he entered the bank, the man donned a black ski mask with yellow coloring around the mouth and eyes, brandished a small silver gun, told everyone to get down on the floor, and ordered the bank tellers to empty their cash drawers.  He then commanded one of the three tellers on duty that day, Kayla Lash, to hand over the keys to her black Geo Tracker.  Latisha Clay, another bank teller, noticed the robber's distinctively "slow," stuttering, and "not altogether normal" speech pattern, and at trial she unequivocally identified Denton as the bank robber by his voice.

As the bank robber fled in Lash's car with $8,928, he nearly collided with another motorist, Forrest Sims, and then pulled into an abandoned service station beside a green Ford Mustang.  Although Sims, based on his limited view of the driver, described the bank robber as "a black man with a gold grill" wearing a "yellow hoodie," the jury was not obligated to credit Sims' description as accurate, particularly in light of the testimony of other witnesses identifying the robber as a clean-shaven white male – a description matching Denton's physical characteristics.  Wimberly, Denton's friend, coworker, and initially unwitting accomplice, was waiting at the abandoned service station in Denton's green Ford Mustang for Denton to arrive.  Wimberly's trial testimony tied Denton to the clothing and small silver gun captured on the bank's surveillance system and described by other witnesses, and he identified Denton as the source of the money recovered by law enforcement agents from the home of a mutual acquaintance, which included several "bait bills" traceable to the First Southern Bank.

Following his arrest, Denton confessed his role in the bank robbery to a fellow inmate, James Murphy, and urged him to contact one of Denton's sons to fabricate an alibi for Denton for the time of the robbery.  Denton also persuaded another inmate, Charles Brown, to sign a false confession and, to give that confession an air of credibility, he provided Brown with specific details of the bank robbery, such as the fact that the bank robber wore a ski mask and a yellow sweatshirt.  Murphy and Brown testified to those facts at trial and assured the jury that they had not received or been promised anything in exchange for their cooperation.

*United States v. Denton*, 535 Fed. Appx. 832, 837-38 (11th Cir. 2013).

entered, Denton filed a timely Rule 33(b)(1) motion for a new trial based on newly discovered evidence allegedly showing government obstruction and fraud. The district court denied that motion on the merits without holding an evidentiary hearing.

*United States v. Denton*, 697 Fed. Appx. 963, 965 (11th Cir. 2017)(footnote added). The Eleventh Circuit affirmed this court's denial of Denton's motion for a new trial. *Id*. at 968.

This matter is now before this court on Denton's Renewed and Amended Motion to Vacate. (Doc. 30; crim. doc. 425.) Previously, the court summarily dismissed Denton's ineffective assistance claims. (Doc. 39.) At that time, it entered a Show Cause Order, ordering Denton to show cause why his remaining claims should not be dismissed as procedurally barred. (*Id*.) Denton responded, (doc. 53), and this court, for the reasons set forth herein, finds that Denton's remaining claims are procedurally barred and/or without merit.

## II. <u>STANDARD OF REVIEW</u>

Collateral review pursuant to § 2255 is not a substitute for direct appeal; therefore, unlike a direct appeal, the grounds upon which a habeas petition may collaterally attack a final judgment are "extremely limited." *United States v. Marsh*, 548 F. Supp. 2d 1295, 1300 (N.D. Fla. 2008). Section 2255 sets forth four grounds for relief: [1] "the sentence was imposed in violation of the Constitution or laws of the United States;" [2] "the court was without jurisdiction to impose such sentence;" [3] "the sentence was in excess of the maximum authorized by law," or [4] the sentence "is otherwise subject to collateral attack." 28 U.S.C.. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426-27 (1962).

Because collateral review is not a substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir.1994); and (2) "[r]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)(quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep.1981)).

*Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004)(footnote omitted). "To adequately preserve a claim [for collateral review], a movant must raise it both before the trial court (whether by motion, objection, or otherwise) and also on direct appeal." *Isacson v. United States*, No. 1:12-CR-40, 2013 WL 6097231, *7 (N.D. Ga. Nov. 19, 2013)(citing, *inter alia*, *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986)). Except in limited circumstances not at issue here,[3] issues raised and considered on direct appeal cannot be

---

[3]An intervening change in the controlling law may support reassertion of a claim presented to and rejected by the Eleventh Circuit. *See Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012). However, such a change in the controlling law must be retroactive. "Under the retroactivity framework, a prisoner may obtain relief on collateral review of a new claim raising an issue that was denied on direct review, where the Supreme Court has announced a new rule of substantive law after the prisoner's conviction became final." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1136–37 (11th Cir. 2017)(Rosenbaum, J., dissenting).

To determine whether a case is retroactively applicable, we have applied the rubric developed in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). Under *Teague*, we first ask whether the Supreme Court announced a new rule in the decision in question. *Figuereo-Sanchez [v. United States]*, 678 F.3d [1203,] 1207 [(11th Cir. 2012)]. If so, we then ask "whether that new rule satisfies an exception to the general prohibition against the retroactive application of new rules on collateral review." *Id*. at 1208. For a new rule to apply retroactively, it must be "substantive" in that it "alters the range of conduct or the class of persons that

relitigated through a Section 2255 petition. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Neither this court nor the Court of Appeals need consider "the same 'newly discovered evidence' which was before [the Circuit Court of Appeals] at the time of [Denton's] first direct appeal," and "grounds raised in the instant § 2255 petition [that] have been previously decided by both the district court and [the Circuit Court of Appeals] in [his] petition for rehearing, [his] motion for new trial, and [his] direct appeal." *See Vernell v. United States*, 559 F.2d 963, 964 (5th Cir. 1977);[4] *see also United States v. Sanders*, 723 F.2d 34, 36 (8th Cir. 1983)("Absent an intervening change in the applicable law, issues that have been raised and decided on a motion for a new trial cannot be reconsidered in a subsequent collateral attack." (citing, *inter alia*, *Vernell*, 559 F.2d 963)).

"[A] defendant generally must advance an ***available*** challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn*, 365 F.3d 1234 (emphasis added). "Challenges count as ***available*** on direct appeal when their merits 'can be reviewed without further factual development.'" *Linton v. United States*, 712 Fed. Appx. 920, 923 (11th Cir. 2017)(quoting *Mills v. United*

---

the law punishes," or, if it is "procedural," it must be a "watershed rule[ ] of criminal procedure." *Schriro v. Summerlin*, 542 U.S. 348, 351-53, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004) (quotations omitted); *see Figuereo–Sanchez*, 678 F.3d at 1208.

*Dixon v. United States*, 588 Fed. Appx. 918, 921 (11th Cir. 2014).

[4]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

*States*, 36 F.3d 1052, 1055 (11th Cir. 1994))(emphasis added).[5] "In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all." *Id*. at 1235. "Where, however, facts essential to a claim are not in the appellate record, the general rule in favor of a procedural bar does not apply and the issue may be raised on collateral review to permit further factual development." *Brown v. United States*, 688 Fed. Appx. 644, 651-52 (11th Cir. 2017)(citing *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)(citing *Waley v. Johnston*, 316 U.S. 101 (1942) (per curiam))). "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

"If the claim was raised and rejected on direct review, the habeas court will not readjudicate it absent countervailing equitable considerations; if the claim was not raised, it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations (e.g., actual innocence or cause and prejudice . . . )." *Withrow v. Williams*, 507 U.S. 680, 721 (1993)(Scalia, J., concurring in part and dissenting in part)(citing *United States v. Frady*, 456 U.S. 152 (1982))(internal citation omitted).

---

[5]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

A defendant can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error. Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent.

*Lynn* 365 F.3d at 1235 (internal citations and quotations omitted; emphasis in original).

Petitioner bears the burden of demonstrating cause-and-prejudice and/or actual-innocence exceptions to the procedural bar. *Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir. 1983); *see also Hill v. United States*, 569 Fed. Appx. 646, 648 (11th Cir. 2014).

Under the cause-and-prejudice exception, a § 2255 movant can avoid application of the procedural default bar by "show[ing] cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Lynn*, 365 F.3d at 1235 (emphasis in original). "[T]o show cause for procedural default, [the petitioner] must show that some objective factor external to the defense prevented [him] from raising his claims on direct appeal and that this factor cannot be fairly attributable to [his] own conduct." *Id*. at 1235 (footnote and citation omitted). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003)(quoting *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999)).

In addition to the cause-and-prejudice exception, the Supreme Court has "recognized a narrow exception to the general rule [barring consideration of procedurally-defaulted claims] when the habeas applicant can demonstrate that the alleged constitutional error has

resulted in the conviction of one who is actually innocent of the underlying offense." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." *McKay v. United States*, 657 F.3d 1190, 1197 (11th Cir. 2011)(quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with ***new reliable evidence*** – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," and, "[b]ecause such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324 (emphasis added).

### III. DISCUSSION

For the reasons set forth below, the court finds Denton's remaining claims are procedurally barred.

### A. MISCARRIAGE OF JUSTICE

In his response to the court's Show Cause Order, Denton argues:

> Denton, moved to represent himself and concedes he cannot come here and claim ineffective counsel upon himself, nor is he trying to. However, this case represents a novel[ ] situation of the prosecution undermining the trial process out side the record. Granted Denton cannot claim ineffective assistance of counsel upon himself, but for the moment let's ask and answer the question[:] can a counsel of record be render[ed] ineffective by no fault of his own as a result of prosecutorial misconduct outside the record. The answer is yes. The next question [is] whether the misconduct could be

discovered after the [trial], thus exempting it from a procedural bar because it was not raised on appeal[;] the answer there is yes. This is what we have here[,] a case of outrageous government conduct which deprived Denton of a fundamentally fair trial, by and through prosecutorial misconduct out side the record, that was not ripe for appeal because it was not fully developed. Therefore, Justice and due process was denied at every critical stage of the criminal prosecution, a miscarriage of justice which will continue if this court procedurally bars these claims without providing Denton with ample means to develop those claims. . . . [T]his entire case was tainted with prosecutorial misconduct denying Denton his constitutional rights to a fundamentally fair trial.

(Doc. 53 at 6-7.)

As set forth above, an exception to the procedural bar based on the miscarriage-of-justice exception requires a showing of actual innocence of the crime of conviction. "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." *McKay*, 657 F.3d at 1196 (quoting *Schlup*, 513 U.S. at 327). The Supreme Court held, "[E]xperience has taught us that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

In support of his Motion to Vacate, Denton argues that the sworn interrogatory answers of Hollie Todd and Jonathon Todd, filed May 10, 2012, (*see* crim. doc. 370), constitute newly discovered evidence, (*see, e.g.*, doc. 30-1 at 28, 94, 96). For reasons

previously stated, the court has found the affidavits of Hollie and Jonathon Todd are not credible. *See United States v. Denton*, No. 3:11-CR-054-SLB, 2015 WL 854391, *7, 9 (N.D. Ala. Feb. 27, 2015), *aff'd* 697 Fed. Appx. 963 (11th Cir. 2017). With regard to Jonathon Todd, this court held:

> The court notes that Jonathan Todd testified that the man in the bank video walked like Denton; he did not testify that the man in the video was Denton. Moreover, the specific portion of the video that he specified looked like his father stepping indeed resembled Denton's manner of walking as observed by the court. Mr. Todd did not testify that Denton had clothing or shoes matching the clothing and shoes of the man in the video. He testified that he had not been charged with any crime and that he had not been promised anything in exchange for his testimony. Any inference to the contrary is simply not credible, especially in light of Denton's prior attempts to have Jonathan Todd testify falsely regarding his shoes and Wimberly's presence in the apartment on December 16, 2009.
>
> The court finds that the "newly discovered evidence" – Jonathan Todd's answers to written questions – is not material and would not have produced an acquittal. Therefore, Denton's Motion for a New Trial, (doc. 370), will be denied.

*Id*. at *7 (footnote omitted). With regard to Hollie Todd, the court held:

> Hollie Todd's answers do not indicate that she testified falsely at trial. The court finds her statement, regarding the fact that she would have given Denton an interview but for harassment, not credible. The court had the opportunity to observe Ms. Todd throughout these proceedings and the court's deputy specifically asked Ms. Todd if she was willing to meet with Denton, to which she said she did not wish to meet with Denton. Moreover, the court finds such an interview would have made no difference at trial.
>
> Therefore, Denton's Motion for New Trial based on newly discovered evidence – Hollie Todd's answers to written questions – will be denied.

*Id*. at *9 (footnote omitted).

The court's findings with regard to the credibility of the post-judgment testimony of Hollie and Jonathon Todd were affirmed by the Eleventh Circuit, *Denton*, 697 Fed. Appx. at 966-67, and will not be revisited.

Denton also contends that he has "newly discovered evidence" that "stand by counsel acted as a spy in Denton's camp," (doc. 53 at 1-2); and that the surveillance video of the bank robbery does not show "true movement" because it consists of a series of still photographs,[6] (*id.* at 9 and n.8). Denton has not filed any "reliable evidence" of these two facts, although he has submitted his own Affidavit, which contains his factual allegations against his standby counsel. (*See* doc. 32-1 ¶¶ 23-26.)

_____

[6]In his response to the Show Cause Order, Denton notes, "It was not until after Denton's appeal and this § 2255 motion that Barry Horton of [F]irst Southern bank admitted to a third party that the video used by the bank used still shots converted to video and was incapable of showing true movements. However, when Horton was asked to give a affidavit to the affect for the defense Horton became hostile[.]" (Doc. 53 at 9 n.8.)

However, all video is created by combining frames, or still photographs, in sequence to create the appearance of motion. "Most video is shot in 24 to 30 frames per second or FPS." Technical Terms: Frame Definition, https://techterms.com/definition/frame; *see also Bryant v. Sec'y, Dep't of Corr.*, No. 4:08-CV-442-RH-GRJ, 2012 WL 1071930, *2 (Feb. 15, 2014)(Expert testimony that "traditional video . . . records at a 'real-time' rate of 30 frames per second"), *report and recommendation adopted* 2012 WL 1071899 (N.D. Fla. Mar. 28, 2012). Surveillance videos are generally shot at fewer FPS. *See Mobley v. State*, 132 So. 3d 1160, 1167 (Fla. Dist. Ct. App. 2014)(2 FPS); *see also Alvarez v. City of Brownsville*, No. CV B:11-78, 2013 WL 12141360, *2 (Feb. 25, 2013)(8 FPS), *report and recommendation adopted*, No. B-11-078, 2013 WL 12141361 (S.D. Tex. Mar. 19, 2013), *rev'd in part*, 860 F.3d 799 (5th Cir. 2017); *Dietrich-Barnes v. Alexander*, No. 1:05-CV-1751-TCB, 2007 WL 9701407, *4 (N.D. Ga. Aug. 22, 2007)(2 FPS); *People v. Buckley*, 2016 IL App (2d) 140420-U, ¶ 20, 2016 WL 4063498 *4 (4 FPS); *Dep't of Corr. & Rehab. v. State Pers. Bd.*, No. C054639, 2008 WL 4519019, at *16 (Cal. Ct. App. Oct. 8, 2008)(15 FPS)(unpublished). "[H]uman vision is equivalent to 60 [FPS]." *Mobley*, 132 So. 2d at 1167.

Assuming this "evidence" qualifies as reliable and "newly discovered," Denton has not persuaded the court that, considering all the evidence – the "new" evidence and the evidence presented at trial, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *See Schlup*, 513 U.S., at 329. "[T]he District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial," and "the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Id*. at 331-32. "Based on this total record, the court must make a probabilistic determination about what reasonable, properly instructed jurors would do. The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House v. Bell*, 547 U.S. 518, 538 (2006)(quoting *Schlup*, 513 U.S. at 329)(internal citation and quotations omitted). The evidence regarding the video of the bank robbery, standby counsel's heads-up to Stokes, and cancellation of Denton's subpoenas (discussed further below), when considered in light of evidence presented at trial, is sufficient to support a reasonable jury finding Denton guilty of armed bank robbery and of using a firearm during a crime of violence. Certainly, the evidence is such that the court cannot find that no juror would have found Denton guilty had he or she known that the bank video was a combination of still photographs, that standby counsel had given Stokes a heads-up about Denton's intention to question him regarding inconsistent statements, and/or that Denton's subpoenas were cancelled.

For these reasons, the court finds that Denton has not shown that he is actually innocent of the crimes of conviction sufficient to excuse his procedural default of the claims, as set forth below, raised in his Motion to Vacate.

## B.  DENTON'S HABEAS CLAIMS

### 1.  PROSECUTORIAL MISCONDUCT

#### a.  Second Grand Jury

Denton contends that "[t]he government's attorney exceeded her authority in this case when she presented this case to a second grand-jury panel [without seeking permission from U.S. Attorney General] when a previous panel [had] failed to indict Denton." (Doc. 30-1 at 39.)  Denton was aware of the fact that he had been indicted by the second grand jury to consider his crimes prior to the end of his trial.   *See* Appellant's Initial Brief, *Denton v. United States*, Case Nos. 15-11152-DD, 15-13674-DD, 2016 WL 3475361 at 23 (11th Cir. June 20, 2016)(Denton argued, "In fact this misconduct started all the way back to the grand jury proceedings, first the government attempted to get an indictment on Mr. Denton by presenting [its] key witness[,] James Wimberly, but the grand jury was not buying it . . . . [T]he government went back to the grand jury and mis-represented material facts . . . ."); crim. doc. 352 at 121 (Denton stated in open court that he had James Wimberly's grand jury testimony; Wimberly did not testify before the second grand jury).  This claim was available at the time of Denton's first appeal and, therefore, it is procedurally defaulted.  Denton has not demonstrated cause for the default.  The court finds that the claim is due to be dismissed.

In the alternative, the court notes that Denton has not alleged a violation of a constitutional right or a violation of a law of the United States caused by the presentment of the charges to a second grand jury without prior authorization from the Attorney General. Citing *Moore's Federal Practice*, Denton alleges, "The standard policy of the Justice Department requires a prosecutor to seek permission from Washington, D.C.[,] prior to presenting a crime to a second grand-jury when the previous grand-jury had failed to indict the defendant." (Doc. 30-1 at 39 [citing "Vol. 24, Moore's Federal. Practice, section 606.02[2][b][iv]"].) In this treatise, the authors cite to the Manual for United States Attorneys. *See* 24 Moore's Federal Practice § 606.02[2][b][iv] n. 74. However, the Manual is ***not*** a law of the United States. *See United States v. Apel*, 571 U.S. 359, 368-69 (2014)("The Manual provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal."); *see also San Pedro v. United States*, 79 F.3d 1065, 1070 (11th Cir. 1996)("It is well established that the [United States Attorneys' Manual] only provides guidance to officials at the Department of Justice and does not have the force of law."). Denton has no ***right*** under federal or Constitutional law to set aside the indictment by a second grand jury obtained without prior approval of the Attorney General.

Thus, if this claim is not procedurally barred, it would be denied as without merit.

### b. False Evidence Presented to Grand Jury

Denton alleges that the prosecutor presented "false material facts" to the grand jury and that this requires reversal of his conviction. (Doc. 30-1 at 40.) Specifically, he contends that Special Agent Stokes testified falsely before the grand jury with regard to the following facts:

> a. Authorities recovered a small caliber handgun shells during the first search of Denton apartment on the day following the robbery. (Doc. 30-1 at 41). The shells were actually recovered in the second search. (*Id*.)

> b. Stokes led the grand jury to believe that Denton was unable to drive. (*Id*.) "[T]he AUSA and Stokes were well aware Denton drove and had a valid driver[']s license." (*Id*. at 42.)

> c. Stokes told the grand jury that an eye witness had described the bank robber as a man in a yellow hoodie; he did not mention to the grand jury that this eye witness had described the bank robber as "black." (*Id*.) The eyewitness testified at trial that he had seen a black man driving the vehicle taken during the bank robbery. (*Id*.)

> d. Stokes "[misled] a grand-juror to the conclusion that it could not be Wimberly robbing the bank because [Stokes] possessed a photo of the robber's face." (*Id*. at 42.) However, the government did not have a photo of the robber's face.[7] (*Id*.)

---

[7]At trial one of the bank tellers testified that she had observed a man with "a light complexion, dirty blonde hair, and . . . no facial hair" pulling a mask down as he was coming into the bank." (Crim. doc. 351 at 34-35.) The Government argued that the bank robber could not have been Wimberly because he had a full beard at the time of the robbery. (*See* crim. doc. 387 at 24, 55.) At sentencing, Denton sought to have still photos from the bank's surveillance video entered into evidence and the following discussion was had:

> THE COURT: These are still photographs from the bank. Trial is over, and I'm not going to allow those to be received.

> DEFENDANT DENTON: I would like to object, Your Honor, because the indictment was retained on the testimony from Agent Stokes that he had a picture of the bank robber's face, and there's not one in there. I wasn't

e. Stokes testified that Jonathon Todd told him that Denton and Todd had discussed robbing banks. (*Id*. at 43.) Todd submitted a sworn statement that he did not tell Stokes this information. (*Id*.)

f. Stokes testified before the grand jury that "[Jonathon] Todd made a positive identification of Denton in the video of the robbery." (*Id*.) In his

_____

provided with one.

THE COURT: Do you want to make those part of what, this sentencing today?

DEFENDANT DENTON: No, I want them part of the record. See, they're not in the record. When I attack it on the appeal, when I alleged the indictment was retained on fabricated evidence, there's no way I can prove it unless the government affirms that these pictures, that these photos, have all been provided to me, and that they would like to enter the photo in the record that they have testified to at the Grand Jury that shows the robber's face, and that would help.

THE COURT: Did Mr. Wimberly testify at the Grand Jury?

MS. BURRELL: No. What he's talking about, Your Honor, is the transcript that he's got of Agent Stokes where I believe somebody during the Grand Jury asked him a question about a beard, and Agent Stokes testified that there was a time during the surveillance video where you could see the robber's face, and that he did not have a beard. And we allege and it clearly does show that.

And I gave him those still images in discovery because we thought we might use them at trial. It turned out we didn't feel like we had to.

DEFENDANT DENTON: I have the testimony here.

THE COURT: I'm not going to allow those exhibits to be offered. That's my ruling.

(Crim. doc. 354 at 6-7.)

post-trial statement, "Todd swears that he never made such an identification." (*Id.*)

Prior to his direct appeal, Denton obtained Stokes's grand jury testimony. On appeal he argued that the Government had a duty to disclose Stokes's grand jury testimony as Jencks Act[8] material. As part of his argument, Denton contended that the transcript showed "'material inconsistencies' between Agent Stokes'[s] testimony before the grand jury and his testimony at trial." *Denton*, 535 Fed. Appx. 832, 836 (11th Cir. 2013). The Eleventh Circuit rejected Denton's argument, holding, *inter alia*, "the portions of Agent Stokes'[s] grand jury testimony that Denton highlights on appeal are not inconsistent with Stokes'[s] later testimony at trial and thus lack any impeachment value anyway." *Id.* at 837.

After his direct appeal was filed, Denton filed a Motion for New Trial based, in part, on affidavits from Hollie and Jonathon Todd contradicting their trial testimony. These

---

[8]In pertinent part, the Jencks Act states:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

16 U.S.C. § 3500(a)-(b).

affidavits form the basis of a number of the allegations of perjury regarding Stokes's grand jury testimony.[9]  The court found these affidavits were not credible, and the Eleventh Circuit affirmed on appeal.  *See United States v. Denton*, No. 3:11-CR-054-SLB, 2015 WL 854391, *7, 9, 10-11  (N.D. Ala. Feb. 27, 2015), *aff'd* 697 Fed. Appx. 963, 966-68 (11th Cir. 2017).  Also, this court held:

> Denton contends that Stokes testified falsely to the grand jury regarding "(1) [Jonathon] Todd positively [i]dentified Denton as the robber in the Video [;] (2)[t]hat [Jonathon] Todd [i]dentified the [c]lothes and [s]hoes the robber wore as Denton's[;] and (3)[t]hat Hollie Todd identified the gun as belonging to Denton." [footnote] ([Crim.] Doc. 392 at 23.)  He also contends that Stokes and Vanderford threatened Hollie and Jonathon with prosecution if they did not testify as identifying Denton and his clothing and gun in the bank video and/or if they communicated with Denton before or during the trial.  As set forth above, the court finds Hollie and Jonathon Todd's statements regarding threats from Stokes and Vanderford are not credible and are immaterial.

> > [Footnote:]  The court does not find, based on the sworn statements of Jonathon and Hollie Todd that Stokes knowingly testified falsely during the grand jury proceedings.  Stokes testified that he interviewed Jonathon Todd, who identified the man in the bank video as his father by his clothing, the yellow hoodie, gloves, and tennis shoes with green trim, ([crim.] doc. 392-2 at 30), and "his gait, the way he walks, extremely strange," (*id*. at 29).

> At trial Stokes did not testify that Jonathon Todd had identified his father's clothes as being the clothes of the bank robber or that he had identified the man in the video was his father.  Also, he did not testify that Hollie Todd had identified the gun in the video as belonging to Denton.  Yet, without this testimony from Stokes, the jury at trial found Denton guilty of all counts beyond a reasonable doubt.  Therefore, the court finds Stokes's alleged false testimony before the grand jury was immaterial and did not prejudice Denton.

---

[9]The exception is Stokes's alleged perjured testimony that the bullet was recovered during the first search of Denton's apartment.

*See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988)("We hold that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants."); *Anderson v. Secretary for Dept. of Corrections*, 462 F.3d 1319, 1328 (11th Cir. 2006)(citing *United States v. Mangual-Corchado*, 139 F.3d 34, 42 (1st Cir. 1998); *Talamante v. Romero*, 620 F.2d 784, 791 (10th Cir. 1980)); *see also United States v. Mechanik*, 475 U.S. 66, 67 (1986)("We believe that the petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted.").

For these reasons Denton's Motion for a New Trial based on Stokes's grand jury testimony will be denied.

*Denton*, 2015 WL 854391 at *11.

Denton appealed and, on appeal, he argued:

In the second grand jury proceedings the government presented S.A. Patrick Stokes. The testimony of S.A. Stokes was entirely hearsay, the new evidence supports that S.A. Stokes presented fabricated evidence to obtain an indictment.

S.A. Stokes testified that Mr. Sims stated he saw a guy wearing a yellow hoodie and thats all he knows. (Grand Jury Testimony (GJT) at p. 8 exhibit B). Mr. Sims testified at trial he saw a black man with a gold grill (T.T. at 73). Next S.A. Stokes testified he found a small caliber handgun shell during the search of Mr. Denton's apartment the day after the robbery (GJT at 18). However, the trial revealed that no handgun shell was found during that search, in fact the handgun shell appeared in the apartment months later while Mr. Denton was in jail.

S.A. Stokes testified that Mr. Denton's son positively identified Mr. Denton in the video of the robbery as "that[']s my daddy" (GJT at 28 and 33). However, Mr. Todd now says that is a lie [and] he never did say that[;] moreover, his trial testimony does not support a [positive] identification at all.

Finally S.A. Stokes testified that [Jonathon] Todd identified the clothes and shoes that the robber wore as belonging Mr. Denton. However, Todd now swears that to be a lie. (See [interrogatories] by Mr. Todd.[)]

Mr. Denton contends the newly discovered evidence supports fraud before the grand jury to obtain an indictment, as well as fraud before the trial court. Suppression of favorable evidence, and witnesses intimidation.

Appellant's Brief, *Denton v. United States*, Nos. 15-11152-DD, 15-13674-DD, 2016 WL 3475361, *5-6 (11th Cir. June 20, 2016). The Eleventh Circuit affirmed this court's denial of Denton's Motion for New Trial based on these statements. *Denton*, 697 Fed. Appx. 963, 967-68 and n.3.

"[A]n issue '[p]resented is presented.'" *Stoufflet v. United States*, 757 F.3d 1236, 1242 (11th Cir. 2014)(quoting *White v. United States*, 371 F.3d 900, 902-03 (7th Cir. 2004)). The issues concerning false testimony before the grand jury were presented to and rejected by the Eleventh Circuit. Therefore, the court finds that this claim is procedurally barred and will be denied.

Assuming that such claims are not procedurally barred, the court finds that the claim is without merit for the reasons set forth in its earlier opinion. *See Denton*, 2015 WL 854391 at *11.

## 2. LAW BOOKS AND OTHER LEGAL MATERIALS

In his Motion to Vacate, Denton contends that he "was denied his Constitutional right to due process and equal protection of the law along with a fundamentally fair trial[, as well as] his Constitutional right to self representation[,] when the court withheld the [readily] available law books Denton requested under the flag of expense." (Doc. 30-1 at 46.) This issue was raised and rejected by the Eleventh Circuit on direct appeal. *See United States v. Denton*, 535 Fed. Appx 832, 834-35 (11th Cir. 2013). Therefore, this claim for relief is

procedurally barred and will not be reconsidered. Denton cannot show cause and prejudice, and he has not shown that he is actually innocent of the crimes of conviction. Therefore, Denton's claims based on the alleged denial of access to legal materials will be denied.

Assuming this claim is not procedurally barred, the court finds that it is without merit.

During the *Faretta* hearing, the Magistrate Judge informed Denton: "When you represent yourself, you are going to be in a local county jail. The access to legal materials is much, much more limited than it would be for Mr. Steen [standby counsel], who can just come to the law library here, which you can't do. He can go to his own library in his office and he can go to the county library. He has opportunities you don't. You limit yourself in that regard." (Crim. doc. 41 at 31.) Denton told the Magistrate that he understood this limitation, but that he still wanted to represent himself. Thereafter, this court was informed that Denton was coming to the U.S. Marshal's lock-up every day. This court held that Denton could request materials, but that he would not be brought to the Marshal's lock-up everyday for purposes of conducting legal research. (Doc. 172 at 292-98.) Relying on *Smith v. Hutchins*, 426 Fed. Appx. 785, 788 (11th Cir. 2011), the court stated:

> THE COURT: . . . [T]his case . . . came out from the 11th Circuit on May 12th, 2011, and it's Nathan Smith versus Gary Hutchins and Edward Tarver, and I am going to read in the record in part from this case.
>
> "It's a Sixth Amendment right to waive counsel. Federal criminal defendants have both statutory and Sixth Amendment rights to waive counsel and represent themselves when they voluntarily and intelligently so elect."
>
> I'm going to stop reading here and say that's what you've done; right? And they cite 28, U.S. Code, 1654, Faretta versus California, 422 U.S. 806, 95 S. Ct. 2525 (1975).

"However, the right to proceed pro se in a criminal trial does not imply there are additional rights to access legal materials or law libraries. But when an accused manages his own defense, he relinquishes as a purely factual matter many of the traditional benefits associated with the right to counsel."

I am going to omit the citations, but I am still reading from this May 12th, 2011 case. And then it cites U.S. versus Smith. "We find that by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library."

"We decline to interpret the right of self representation under the Sixth Amendment to include a right to conduct one's own research at government expense. Thus, to the extent that Smith" – that's this defendant – "that Smith argues that his Sixth Amendment rights were violated due to the lack of a law library at Jefferson County LEC ["Law Enforcement Center"] his complaint fails to state a claim."

"Smith had the option of being represented by counsel but chose to proceed pro se, during which time his appointed counsel remained on duty as standby counsel."

"Given the particular facts of this case, the Sixth Amendment does not grant Smith a right to access a law library at Jefferson County LEC in order to prepare his defense."

. . . [I]n my view, based on this case, you do not have the right to come here at government expense and have the 11th Circuit law library be bringing you books to study in the marshal's lock up. . . .

. . . [I]n my case, I will still allow you to request to file anything you wish to file, but it is unlikely, based on this case, that you'll be coming here in this case.

(Crim. doc. 172 at 296-98.)

On appeal, the Eleventh Circuit affirmed the court, holding:

We have held that a pro se criminal defendant has no constitutional right of access to a law library or legal materials where counsel has been offered. *Edwards v. United States*, 795 F.2d 958, 961 nn.1 & 3 (11th Cir. 1986) (rejecting a collateral challenge to a criminal conviction based on the

denial of library access while the petitioner proceeded pro se at trial, and concluding that "[w]hen counsel is offered, the alternative of a library is not mandatory"). Although Denton takes issue with the soundness and adequacy of our decision in *Edwards*, we are bound by that decision under the prior panel precedent rule unless and until it is overruled by the Supreme Court or this Court sitting en banc. . . . Even assuming that a *Faretta* defendant has a right of reasonable access to legal materials, as Denton argues, under the circumstances of this case that right was not violated. There is no merit to Denton's contention that the district court imposed unjustified and extreme restrictions on his ability to access legal materials relevant to the criminal proceedings against him.

*Denton*, 535 Fed. Appx. at 835.

For these reasons, even if the claim was not procedurally barred, the court would dismiss this claim as without merit.

### 3. STANDBY COUNSEL

Denton argues that he "was denied his Constitutional right to a fundamentally fair trial and to represent himself by the actions of [Russell] Steen," his standby counsel. (Doc. 30-1 at 67.) Specifically he contends that Steen "violated [his] confidence" and undermined his right to "cross-examine"[10] Stokes by informing Stokes of the subject of his questions, (*id*. at 67-68), that Steen cancelled Denton's subpoenas without telling him, (*id*. at 68-69); and Steen and the Government withheld discovery material, (*id*. at 69-71). He contends that he has "newly discovered evidence that the counsel appointed as stand by counsel acted as a spy in Denton's camp." (Doc. 53 at 1-2.) And, "This claim is not fully developed and most importantly if Denton is allowed to prove this claim he is entitled to relief. Moreover, the

---

[10]Denton alleges that Steen provided Stokes a head-up before Denton's ***direct*** examination of Stokes.

files and records do not conclusively show Denton is not entitled to relief on this claim, this is because it occurred outside the record and even further, without allowance for further development was not ripe for appellate purposes, thus cannot be subject to a procedural [bar] of such as the court is seeking to implement." (*Id*. at 2.)

### a. Steen's heads-up to Stokes

Denton alleges that he heard Steen tell Stokes that Denton was going to question him regarding inconsistencies in his grand jury testimony.[11] (Doc. 32-1 ¶¶ 23-24.) He contends, "This is [an] issue that occurred outside of the record, by an officer of the court. [An] issue that is [on] the same footing as ineffective assistance of counsel, i.e., not cognizable on

---

[11]Denton alleges:

> 23.) During the trial I informed the court that I wished to call S.A. Patrick Stokes to the stand. I discussed in confidence with standby counsel Russel[l] E[.] Steen the purpose of calling S.A. Stokes[,] i.e., to preserve the record of false testimony of S.A. Stokes during the suppression hearing.

> 24.) Prior to S.A. Stokes taking the stand the court called a short recess. . . . In light of the recess called by the court, the [Marshals] escort[ed] me back to the holding cell. However, at that time the jury was proceeding down the hall[;] therefore, I was instructed by the [Marshals] to sit down in the back of the courtroom to prevent the jury from seeing me in handcuffs. As I was sitting there I observed Russel[l] E. Steen approach S.A. Stokes showing him the transcript that myself and Steen discussed. In doing so, I overheard Steen inform S.A. Stokes "here is what he is going to question you about, I just wanted to give you a heads up." I later filed a motion to have Steen removed from my case stating the above. The motion was addressed by Magistrate Judge John E. Ott, during open court Judge Ott asked Steen what he had to say in regard to my allegation, Steen refused to comment on record.

(Doc. 32-1 ¶¶ 23-24.)

appeal because the facts of the claim are not fully developed, thus not ripe for appeal and most importantly . . . not subject to the procedural [bar]." (Doc. 53 at 10.)

The fact that this incident "occurred outside the record" does not make Denton's assertion "new evidence." The reason this claim was "outside the record" is because Denton failed to object or otherwise preserve this issue for review on appeal by raising the issue before the trial court contemporaneously with his observation of Steen giving Stokes a heads-up prior to Denton calling Stokes as a witness.[12] "Plainly, [Denton's] claim[ ] . . . could have been preserved for and presented on appeal. The fact that [it was] not, means that [it is]

_____

[12]The court notes that Denton's pro se status does not excuse him from the obligation to make an objection on the record at the time of the alleged error. *See United States v. Chaney*, 662 F.2d 1148, 1151-52 and n.4 (5th Cir. Unit B 1981). "To preserve an issue for appeal, 'one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought.'" *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007)(quoting *United States v. Dennis*, 786 F.2d 1029, 1042 (11th Cir. 1986)). The Supreme Court has held:

> The failure of the federal habeas courts generally to require compliance with a contemporaneous-objection rule tends to detract from the perception of the trial of a criminal case in state court as a decisive and portentous event. A defendant has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification.

*Wainwright v. Sykes*, 433 U.S. 72, 90 (1977).

procedurally defaulted and cannot be litigated in a post-conviction § 2255 motion." *See Askew v. United States*, No. 1:08-CR-204-LSC-TMP, 2014 WL 1233686, *6 (N.D. Ala. Mar. 25, 2014).

Denton has not shown cause and prejudice or that he is actually innocent of the crimes of conviction. Therefore, his claim based on Steen giving Stokes a heads-up before Denton called Stokes to the stand will be denied.

Even if this claim was not procedurally barred, it would be due to be dismissed as Denton has not alleged – and, as a matter of law, he cannot show – that he suffered actual prejudice as a result of Steen telling Stokes that Denton intended to question him about his grand jury testimony. Any "heads-up" occurred shortly before Stokes took the stand, and the fact that Denton intended to question Stokes about alleged inconsistencies in his grand jury testimony was not a surprise to Stokes or anyone else involved in this trial. Even assuming Steen told Stokes that Denton planned to question him about his grand jury testimony, such a revelation did not cause prejudice to Denton.

### b. Witness Subpoenas

Denton contends that Steen cancelled his witness subpoenas, particularly the subpoena for Christine Sutton, his landlord. (Doc. 30-1 at 68-69; doc. 53 at 10-11.) He alleges, "[A]lthough Denton confronted Russell Steen in the presence of Honorable [M]agistrate Judge John E Ott concerning this undermining of his defense, the record of this violation is not fully developed, thus [was] not ripe for appellate review." (Doc. 53 at 10-11.) Again,

this issue was not "ripe" because Denton did not object at trial or otherwise preserve this issue for review. *See Askew*, 2014 WL 1233686 at *6.

Denton raised this issue in his Motion for New Trial, which the court denied. (Crim. doc. 242 at 2; crim. doc. 304 at 3 [available at *United States v. Denton*, No. 3:11-CR-0054-SLB, 2012 WL 12894171, *1 (N.D. Ala. Jan. 24, 2012)].) The court held: "The number of subpoenas that the court would allow to be served and the witnesses that the court would allow at trial were all discussed on the record with defendant both before and during the trial. The defendant wished to call a number of witnesses who the court determined could not provide relevant evidence. Defendant's Motion for a New Trial based on this argument is without merit." *Denton*, 2012 WL 12894171 at *1. This issue was available to Denton on direct appeal. Therefore, he is barred from raising it herein.

Denton has not shown that any external factor prevented him from raising this issue on appeal. He was aware prior to presenting his defense at trial that his landlady, Mrs. Sutton, had not appeared for trial. He has not shown that this fact was concealed from him and/or that he could not discover facts sufficient to argue the issue on appeal. Also, Denton has not presented any new, credible evidence that he is innocent of the crimes of conviction. Therefore, this claim is due to be denied as procedurally barred.

Even assuming no bar, the court finds that the record contains insufficient allegations that some or all of Denton's subpoenas were actually cancelled by Steen and/or that Denton suffered any prejudice based on the failure of these witnesses to be available. At trial, prior to the Government resting, the following occurred:

DEFENDANT DENTON: . . . My landlady, she's like 80 years old, and I was wondering is there any way we can get her in?

THE COURT: What is it you want to ask her?

DEFENDANT DENTON: Basically, they're just saying my money was spiraling out of control, but I had sat down with her and worked out my rent. I had everything under control.

THE COURT: We haven't finished the government's case in chief yet. At the end of that, we can talk about whether she's willing to come or whatever. Was a subpoena issued?

DEFENDANT DENTON: She's here, I think.

THE COURT: She's here right now. [To the Clerk] Is she here?

THE CLERK: I haven't seen her.

DEFENDANT DENTON: I *think* she was subpoenaed is what I'm saying.

THE COURT: We can't take a witness out of order. We can take that witness first after the government rests, but not now.

DEFENDANT DENTON: Yes, ma'am.

(Crim. doc. 352 at 4-5 [emphasis added].) The following day, after the Government rested,

Denton informed the court that he did not wish to call *any* witnesses, except Agent Stokes:

THE COURT: . . . Now, I do want to talk to you about what your plans are with regard to your case. How many witnesses – and, specifically, I want to have a conversation with you about whether you plan to testify.

DEFENDANT DENTON: Can I just talk with Mr. Steen, go over that with Mr. Steen?

THE COURT: I tell you, you all can go back in, but I've only given the jury about 30 minutes, maybe not quite that long. You all go in there and talk, and . . . you can have like five minutes, if you want.

29

(Brief recess)
(Open court, outside the presence of the jury.)

THE COURT:  Mr. Denton, the government has rested on the record, but I am going to have them rest in front of the jury when they're in the box. Do you plan to call any witnesses in your case?

DEFENDANT DENTON:  No, ma'am.  The defense rests.

THE COURT:  You don't plan to call any witnesses?

DEFENDANT DENTON:  I'm sorry.  I got some stuff I need to enter into the record as exhibits.

THE COURT:  What are they?

DEFENDANT DENTON:  My medical records and my finance records.

THE COURT:  All right.  Let me see those.  Does the government have a copy of those?

MS. BURRELL:  I don't, Your Honor, but he has shown them to me, and I don't object to him offering them.

THE COURT:  The financial records I can see some relevance to those as to when checks were written, that maybe he had some money.  But what the medical records, what do they show?

. . .

DEFENDANT DENTON:  It deals with opening statement more than anything, that I was erratic, worried about going back to prison, that I had sought counseling for it.

. . .

THE COURT:  Okay.  All right.  They're already marked.  And so during the case, you're going to stand up and just offer those records, that's all you want to do?

DEFENDANT DENTON:  Yes, ma'am.

. . .

(Brief pause)

DEFENDANT DENTON: Excuse me, Your Honor.

THE COURT: Yes, sir.

DEFENDANT DENTON: I'm sorry. Please forgive me, but I've decided to call **one witness**.

THE COURT: Sure. Who do you want to call?

DEFENDANT DENTON: **Agent Stokes**.

THE COURT: Yes, you can call Agent Stokes.

Okay. All right. Can we excuse the other witnesses that were here?

DEFENDANT DENTON: Yes, ma'am.

(Crim. doc. 353 at 39-41, 48 [emphasis added].) Denton cannot show any prejudice caused by his standby counsel's cancelling the subpoenas for witnesses that Denton did not call to testify.

Therefore, assuming that this issue is not procedurally barred, it is due to dismissed as without merit.

### c. Withheld Discovery

Denton complains that he was deprived of access to discovery material shortly before trial because standby counsel was on vacation and did not return until the day the trial began. (Doc. 30-1 at 69-70.) According to Denton –

> [He] requested the discovery material for review approximately seven days prior to the trial to prepare for trial. However, AUSA Mary S. Burrell

informed Denton that "since Denton wanted to act like an attorney" he would be treated like one. Therefore, "he would not be given access to the discovery anymore."

Denton complained to the court[;] however, [he] learned his stand-by counsel had been given the discovery material. Denton was also informed his stand-by counsel had taken [a] vacation and would not return until the day of trial. Therefore, Denton was deprived of the discovery material at a critical point in the trial process. Therefore, [he was] denied his right to fairly represent himself.

(*Id*. at 70; *see also* crim. doc. 248 at 4 [In his Motion for Court to Take Judicial Notice of Facts Herein and Make Part of the Record, Denton alleged, "Standby Counsel in this matter went on vacation . . . during the time the Government placed critical evidence into the discovery file and refused defense access."].) Denton alleges that "by refusing or neglecting to provide Denton with access to the discovery material to prepare for trial[,] Steen underminded [sic] Denton's Constitutional right to a fundamentally fair trial and self-representation." (Doc. 30-1 at 70-71.)

This matter was discussed on the record prior to and during Denton's trial, after trial and before sentencing, and at sentencing. It could have been raised on appeal. Therefore, this issue is procedurally barred and will be dismissed.

Denton has not alleged any cause for his failure to raise this issue on appeal and he has not shown that he is actually innocent of the crimes of conviction. Therefore, this claim will be denied.

Assuming this claim is not procedurally barred, the court finds that it is without merit. "When an accused manages his own defense, he relinquishes, as a purely factual matter,

many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835. The Supreme Court has not clearly established a pro se defendant's constitutional right to the effective assistance of standby counsel,[13] much less an established right to the assistance of standby counsel to receive discovery that a pro se defendant is unable to receive personally due to his confinement. The fact that Steen was on vacation and did not receive discovery Denton could not receive due to his confinement does not state a claim for habeas relief based on the violation of Denton's constitutional rights. Denton has not shown otherwise.

_____

[13]*Porter v. United States*, No. 3:05-CR-339-J-33-TEM, 2011 WL 1832716, *4 (M.D. Fla. May 13, 2011)("[T]here is no constitutional right to stand-by counsel." (citations omitted)), *vacated and remanded* 467 Fed. Appx. 822, 822-23 (11th Cir. 2012)("If the district court does not address all claims prior to issuing judgment, this Court will vacate the district court's judgment without prejudice and remand the case for consideration of all remaining claims." (quoting *Clisby v. Jones*, 960 F.2d 925, 938 (1992); internal quotations omitted)), *adhered to on remand*, 2012 WL 3024453 (M.D. Fla. July 24, 2012); *see United States v. Moreland*, 622 F.3d 1147, 1155 (9th Cir. 2010)("Once a district court has determined that a defendant's waiver of his right to counsel is knowing and intelligent, it may appoint standby or "advisory" counsel to assist the pro se defendant without infringing on his right to self-representation. At the same time, a defendant who waives his right to counsel does not have a right to advisory counsel.")(internal citations omitted); *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir. 1992)("This court knows of no constitutional right to effective assistance of standby counsel. As the word 'standby' implies, standby counsel is merely to be available in case the court determines that the defendant is no longer able to represent himself or in case the defendant chooses to consult an attorney."); *see also Clark v. Perez*, 510 F.3d 382, 395 (2d Cir. 2008)("[T]here is no constitutional right to hybrid representation, whereby a defendant who represents herself can choreograph special appearances by standby counsel.")(internal citations, quotations, and alterations omitted).

Therefore, the court finds that this claim and Denton's other claims complaining of actions by his standby counsel are due to be dismissed.

### 4. HOLLIE AND JONATHON TODD

Denton alleges that he "was denied his constitutional right to due process of law and his constitutional right to represent himself when the government agents interfered with and corruptly influenced potential defense witnesses." (Doc. 30-1 at 71.) Specifically, he contends he "has new evidence that upon learning of Denton's intended defense witnesses . . . agents of the government contacted the witnesses and instructed them to not have any communication with Denton." (*Id*. at 71-72.) His "new evidence" consists of the sworn statements of Hollie and Jonathon Todd, which were filed with this court in May 2012, (*see id*. at 74-75 [citing exhibit G, doc. 3-1 at 72-78; exhibit K, doc. 3-2 at 20-23]),[14] and Jamie Todd's off-the-record request to speak to his father, (*see id*. at 75 [citing Exhibit P(2), doc. 3-1 at 55-56]).[15]

Denton's claims about being denied access to Jonathon and Hollie Todd were raised and rejected by this court in its denial of his Motion for New Trial. *See Denton*, 2015 WL 854391 at *7, 9 and n.8. The Eleventh Circuit affirmed:

_____

[14]The answers to "Request for Written Questions to Be Answered by Johnathon [sic] Todd" and "Questions Presented to the Person of Hollie Todd" were signed on April 26, 2012 by the Todds, and deemed filed by Denton on May 8, 2012. (*See* crim. doc. 370 at 9, 13, 14.)

[15]The page of the trial transcript submitted by Denton does not contain a statement by Jamie Todd that he wished to speak with his father. (*See* doc. 3-1 at 56; *see also* crim. doc. 352 at 269; crim. doc. 353 at 7-8.)

Denton first contends that newly discovered evidence shows that the government improperly interfered with his right to establish a defense by instructing his sons, Jamie and Jonathon, and his daughter-in-law, Hollie, not to have any contact with him before his trial. *Cf.* [*United States v.*] *Schlei*, 122 F.3d [944,] 991 (11th Cir. 1997)("This court has held that substantial government interference with a defense witness'[s] free and unhampered choice to testify violates due process rights of the defendant.")(quotation marks omitted).

As evidence of the government's interference with his defense, Denton first points to a request that Jamie made after he testified at trial, asking to speak to Denton. Even if Jamie's request were evidence of government interference, which we seriously doubt, it is not newly discovered evidence because Denton heard what Jamie said at trial when he said it. "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Because the motion for new trial was not filed until more than nine months after the trial had ended, it is untimely under Rule 33.

The evidence Denton says shows that the government interfered with his right to establish a defense by preventing Jonathon and Hollie from testifying on his behalf came from Jonathon and Hollie's post-trial affidavit; those affidavits included statements that law enforcement had instructed them not to have contact with Denton before the trial.

The district court did not abuse its discretion in finding that those statements in Jonathon and Hollie's affidavits were not credible. The court noted that it was apparent at trial that neither Jonathon nor Hollie wanted to speak to Denton. It based that finding on the fact that Denton had written letters to Jonathon suggesting that he testify falsely; Denton had made statements about trying to have Hollie murdered; and as a result Jonathon and Hollie chose (as opposed to having been instructed) not to speak to Denton. The district court noted that at trial it had given Hollie an opportunity to speak to Denton, and she had refused to do so. The court did not abuse its discretion in finding unfounded Denton's claims that the government interfered with his right to establish a defense.

*Denton*, 697 Fed. Appx. 963, 966-67 (11th Cir. 2017).

Because this claim was rejected by the Eleventh Circuit, it is procedurally barred and will not be reconsidered herein. *See Vernell*, 559 F.2d at 964. Denton's claim that his "Constitutional right to due process of law and his right to self representation [were] denied by government agents interfering with his right to call witnesses on his behalf," will be denied.

### 5. FRAUD ON THE COURT

Denton alleges:

> As Denton attempted to [diligently] and respectfully defend himself against the unfounded criminal charges he was denied any fundamentally fair chance to do so by numerous acts of fraud perpetrated on the court by Asst. U.S. Attorney Mary S. Burrell. For instance Denton was denied access to witnesses of the crime based on fraud, defeated in evidence rulings as a result of fraud and the jury was presented an in[-]court identification relying on the video of the robbery through fraud. Last but not least, Mary Stuart Burrell obtained an indictment against Denton as well as [undermined] due administration of Justice by perpetrating fraud on the court.

(Doc. 30-1 at 79.) Specifically, Denton contends that Burrell "encouraged" or failed to corrected Stokes's false and/or misleading testimony before the grand jury, (*id*. at 80-82); she concealed exculpatory evidence by withholding [an eyewitness's] name during the suppression hearing, (*id*. at 83); she informed the court that Denton's "witnesses wanted nothing to do with him" and this caused the court to "decline[ ] to get involved" with helping Denton interview witnesses, (*id*. at 83); she falsely asserted that evidence would show that Denton fired a shot at Wimberly from a handgun matching the handgun used during the bank robbery, (*id*. at 84); she fraudulently represented that the Government did not "solicit" from Jamie Todd letters in his possession that were written to him by Denton, (*id*. at 85); and she

fraudulently represented that Jonathon Todd had been able to identify Denton as the bank robber by the way the bank robber walked in the surveillance video; (*id*. at 85-86).

These incidents of alleged fraud are procedurally barred. Each incident has been rejected by this court, rejected by the Eleventh Circuit, rejected by both this court and the Eleventh Circuit, and/or could have been raised on appeal. *See Denton*, 697 Fed. Appx. 966 (Jamie Todd's request to speak with Denton doubtful evidence of interference and not newly discovered evidence); *id*. at 966-67 (Hollie and Jonathon Todd's post-judgment statements of government interference are not credible); *id*. at 967-68 (noting Jonathon Todd's trial testimony – "that the man in the bank security video walked like Denton – was consistent with the court's own observations"); *Denton*, 535 Fed. Appx. 837 (Stokes's grand jury testimony was not inconsistent with trial testimony); *Denton*, 2015 WL 854391 at *7 (Jonathon Todd testified that the man in the surveillance video walked like Denton, a fact demonstrated by comparing Denton's gait with the video); *id*. (Hollie Todd identified the gun in the surveillance video as Denton's gun); *id*. at *10 ("Denton was allowed to talk to his sons, his daughter-in-law, and his girlfriend, but, except for Jamie Todd, none of these individuals was willing to talk with him."); *id*. at *11 (Stokes did not testify that Hollie identified the gun in the surveillance video as Denton's gun); *id*, *11 and n.9 (Stokes did not testify falsely before the grand jury and his testimony that Denton alleges was false was not material or prejudicial); *id*. at *12 (eyewitness's identifiers not material or exculpatory); *id*. at *14 (fact that Government asked to see and to copy the letter from Denton to Jamie Todd not material or prejudicial). Nevertheless, Denton contends that these claims are not

procedurally barred because his "claim that the prosecutor relied on fraud to prevail in critical evidentiary issue[s] cannot be properly consider[ed] without a fully developed record of what occurred outside the trial record. Only then will Denton be able to establish his claims and[,] once established[,] he is entitled to relief." (Doc. 53 at 12.) He also claims that "to procedurally bar Denton on this claim would result in a miscarriage of Justice[,] i.e., Justice imposed without accommodating the defendant's constitutional right to due process of law." (*Id*.)

These claims of prosecutor misconduct are procedurally barred. Each has been raised and considered by the court and on appeal, or it could have been raised on appeal. The court will not reconsider its earlier dismissal of these claims, which are without merit.

Therefore, Denton's claims of fraud on the court will be dismissed.

## 6. BANK ROBBERY IS A CRIME OF VIOLENCE

Denton argues that this court lacked jurisdiction to sentence him under § 924(c) because "in light of the subsequent ruling by the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *United States v. Mathis*, 136 S. Ct. 2243, 2249 (2016), a crime under 18 U.S.C. § 2113(a) and (d) will not support a § 924(c) Count because it categorically fails as a crime of violence." (Doc. 30-1 at 134.) This claim could have been raised on appeal; therefore, it is procedurally barred.

Also, the court finds that this claim is without legal merit based on binding Eleventh Circuit precedent, which holds that armed bank robbery is a crime of violence for purposes of § 924(c)(3)(A). *In re Hines*, 824 F.3d 1334, 1337 (11th Cir. 2016)(holding an armed bank

robbery under § 2113(a) and (d) qualifies as a crime of violence under § 924(c)(3)(A)); *see In re Hunt*, 835 F.3d 1277, 1277 (11th Cir. 2016); *Rice v. United States*, No. 1:08-CR-0334-SLB-HGD, 2017 WL 345533, *4-5 (N.D. Ala. Jan. 24, 2017)(Blackburn, J.). Moreover, the Eleventh Circuit has held that, unlike the Armed Career Criminal Act at issue in *Johnson*, the "substantial risk" clause of § 924(c)(3)(B) "is interpreted to embody a conduct-based approach" to which "no constitutional vagueness inheres." *Ovalles v. United States*, 905 F.3d 1231, 1252 (11th Cir. 2018)(quoting *United States v. Barrett*, 903 F.3d 166, 178 (2d Cir. 2018))(en banc); *see also Exposito v. United States*, No. 17-12283, 2019 WL 1125698, at *1-2 (11th Cir. Mar. 12, 2019)(unpublished).[16]

---

[16]In *Exposito*, the Eleventh Circuit held:

In his section 2255 motion, Exposito argued that he was "actually innocent" of his conviction under 18 U.S.C. § 924(c), because – in the light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) – his conviction for armed bank robbery no longer qualifies as a "crime of violence." The district court denied Exposito's motion. The district court then granted Exposito a certificate of appealability on this issue: "whether Movant's conviction for armed bank robbery qualifies as a violent felony under § 924(c)'s use-of-force clause."

In reviewing the denial of a motion to vacate under section 2255, we review de novo the district court's legal conclusions and review the district court's factual findings for clear error. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014).

Section 924(c) provides for a mandatory consecutive sentence of at least seven years if a defendant brandishes a firearm during a crime of violence. 18 U.S.C. § 924(c)(1)(A)(ii). "Crime of violence" is defined as a felony that satisfies at least one of the following criteria:

(A) has as an element the use, attempted use, or threatened use of

physical force against the person or property of another, or

(B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

Exposito first contends that the Supreme Court's decision in *Johnson* – which struck down, as unconstitutionally vague, the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii) – also invalidated the "residual clause" in section 924(c)(3)(B).  This argument, however, is foreclosed by this Court's binding precedent.  *See Ovalles v. United States*, 905 F.3d 1231, 1253 (11th Cir. 2018)(en banc).

Applying the conduct-based approach adopted by this Court in *Ovalles*, Exposito's armed bank robbery conviction qualifies as a crime of violence under section 924(c)(3)(B).  The undisputed facts – as set forth in the government's factual proffer – demonstrate that, during the bank robbery, Exposito carried a gun which he pointed at bank employees.  Exposito and his codefendant restrained the bank employees, stole over $170,000, and then demanded that a bank employee give them keys to a car.  Exposito and his codefendant used the car to drive a short distance, where they boarded forcibly a boat and forced at gun point the boat's owner to transport them from Key Largo to Miami.  In the light of Exposito's actual offense conduct, Exposito's underlying conviction for armed bank robbery involved a substantial risk of physical force and, thus, qualifies as a crime of violence under section 924(c)(3)(B).  *See Ovalles*, 905 F.3d at 1252-53 (concluding that defendant's conviction for attempted carjacking constituted a "crime of violence" under section 924(c)(3)(B) because the undisputed "real-life details" of the crime demonstrated that defendant's conduct "posed a very real 'risk' that physical force 'may' be used.").

Moreover, this Court has already concluded that a conviction for armed bank robbery constitutes a "crime of violence" under the "use-of-force clause" in section 924(c)(3)(A).  *See In re Hines*, 824 F.3d 1334, 1337 (11th Cir. 2016) (denying an application for leave to file a second or successive section 2255 motion); *In re Hunt*, 835 F.3d 1277, 1277 (same); *see also In re Sams*, 830 F.3d 1234, 1239 (11th Cir. 2016)(concluding that a conviction for bank

Therefore, *Johnson* and *Mathis* provide no grounds for challenging a conviction pursuant to § 924(c) for using/carrying firearm during a crime of violence when the crime of violence is armed bank robbery. Denton's claim that he is actually innocent of his § 924(c) conviction is barred and will be dismissed.

## 7. SENTENCE

Denton argues that, "when the court imposed the sentence for the bank robbery conviction it committed a plain error which effected Denton's constitutional rights because the Court failed to take into consideration the consecutive sentence for the § 924(c) Count when considering the factors articulated by Congress pursuant to 18 U.S.C. § 3553(a)." (Doc. 30-1 at 145-46.) This claim could have been raised on appeal; therefore, it is procedurally barred. He has not demonstrated cause and prejudice or actual innocence; therefore, this claim will be dismissed.

Also, the court finds Denton's contention, that this court did not consider the length of his total custodial sentence, is simply incorrect. The court explicitly considered Denton's

---

robbery alone – pursuant to 18 U.S.C. § 2113(a) – qualifies as a crime of violence under section 924(c)(3)(A)). We are bound by that precedent. *See In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (explaining that "our prior-panel-precedent rule applies with equal force as to prior panel decisions published in the context of applications to file second or successive petitions."); *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (under this Court's prior-panel-precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*.").

*Exposito*, 2019 WL 1125698 at *1-2.

total sentence, bank robbery plus consecutive firearm, in determining the appropriate sentence. (Crim. doc. 354 at 58-62.) In fact, as stated repeatedly during the sentencing hearing, the court seriously considered imposing an upward variance based on all the sentencing factors in § 3553. (*See id*. at 58 ["Mr. Denton, I thought seriously and long about varying upwards from the Guideline range, because I have a very serious concern that this is not a long enough sentence for you."]; *id*. at 61-62 [court did not vary upward to give Denton "one less issue to be arguing on appeal"].)

Unlike the district court in *Dean v. United States*, 137 S. Ct. 1170 (2017), cited by Denton, (*see* doc. 30-1 at 146, 152), this court never stated that it was without authority to consider the sentence imposed on the bank robbery count and the sentence imposed for gun count together or that it was without authority to reduce the bank robbery sentence in light of the mandatory § 924(c), consecutive sentence. In *Dean*, the Supreme Court noted:

> Finding that Dean was "clearly the follower" and that he lacked "any significant history of any violence," the District Judge agreed that 30 years [the length of the mandatory minimum under § 924(c)] plus one day was "more than sufficient for a sentence in this case." App. 26. Yet the judge understood § 924(c) to preclude such a sentence. ***In his view, he was required to disregard Dean's 30-year mandatory minimum when determining the appropriate sentences for Dean's other counts of conviction.*** Viewed on their own – and not as part of a combined package – those counts plainly warranted sentences longer than one day. In the end, the judge still granted a significant downward variance from the 84-105 month Guidelines range. Dean received concurrent sentences of 40 months for each non-§ 924(c) conviction, which, when added to his 360-month mandatory minimum, yielded a total sentence of 400 months. Dean appealed.

> Before the Eighth Circuit, Dean argued that the District Court had erred in concluding that it could not vary from the Guidelines range based on the mandatory minimum sentences he would receive under § 924(c). The Court

of Appeals disagreed, ruling that Dean's argument was foreclosed by Circuit precedent and that his sentence was otherwise substantively reasonable. 810 F.3d 521 (2015).

*Dean*, 137 S. Ct. 1170, 1175 (2017)(emphasis added). The Supreme Court reversed and remanded for resentencing, holding that "Nothing in [§ 924(c)] prevents a sentencing court from considering a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense." *Id*. at 1178.

This court considered the mandatory-minimum sentence when it calculated Denton's sentence on the predicate offense – armed bank robbery. Any reason Denton had for believing that this court was unaware it could reduce his sentence for armed bank robbery in light of the minimum mandatory sentence on the gun charge could have been raised on appeal. Therefore, this claim is procedurally barred and will be dismissed.

## CONCLUSION

For the last several years, Denton has filed, and refiled, numerous motions and other documents challenging every aspect of his trial, conviction, and sentence. Now, at least in this court, he has reached the end. Based on the foregoing, the Renewed and Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255, (doc. 30; crim. doc. 425), is due to be denied. An Order denying Denton's Petition and dismissing this case will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant." The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). And, the "certificate of appealability may issue . . . *only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

Denton is not entitled to habeas relief; reasonable jurists could not disagree. He has not demonstrated that the issues he raises are reasonably debatable and/or deserve encouragement to proceed further. Therefore, issuance of a certificate of appealability is not warranted in this case and will not be issued by this court.

**DONE** this 2nd day of May, 2019.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE